**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| JODY R. WEAVER-HODGES f/k/a JODY R. WEAVER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO.: 02-CV-3513 |
| | : |
| | : |
| MEADIA HEIGHTS GOLF CLUB, | : |
| | : |
| Defendant. | : |


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**


Defendant, by and through its attorneys, hereby submits the following memorandum of law in support of Defendant's Motion To Dismiss Plaintiff's Amended Complaint.


**I.      Preliminary Statement**

On July 19, 2002, Plaintiff, Jody R. Weaver-Hodges, filed an amended complaint against Defendant, Meadia Heights Golf Club.  Counts one and two allege sex discrimination by Plaintiff's supervisor in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951 <u>et seq.</u> Count three alleges that Defendant was negligent in its retention and supervision of Patrick Young, Plaintiff's supervisor.   The gravamen of

Plaintiff's amended complaint is that Young discriminated against Plaintiff by showing preferential treatment to his romantic interest culminating in the replacement of Plaintiff with his romantic interest.  Because Plaintiff's amended complaint fails to state a claim upon which relief can be granted, Defendant respectfully requests that Plaintiff's amended complaint be dismissed in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).

## II.     Facts[1]

Defendant, Meadia Heights Golf Club, is a golf and tennis club located in Lancaster, Pennsylvania.  From 1997 until June 2, 2000, Defendant employed Plaintiff as Executive Chef of the Club.  See Exhibit A, Plaintiff's Complaint, at ¶ 9.[2]  In January of 1999, Defendant hired Patrick Young to work as General Manager of the Club.  See ¶ 17.  As General Manager, one of Young's duties was to serve as Plaintiff's supervisor.  See ¶ 13.  Young was Plaintiff's supervisor from January of 1999 though the termination of Plaintiff's employment in June of 2000.  See ¶ 17, 24.

Plaintiff and Young experienced work-related disputes shortly after Young was hired.  See ¶ 18, 22.  These disputes intensified during the Spring of 1999, when Defendant hired Anthony Herr as a kitchen employee.  See ¶ 20.  According to Plaintiff, Young and Herr commenced an ongoing intimate

---

[1]     For purposes of this motion only, Defendant assumes that all facts alleged by Plaintiff are true.

[2]     Unless otherwise noted, all references to paragraph numbers refer to the numbered paragraphs of Plaintiff's Complaint.

relationship that continued throughout Plaintiff's remaining tenure of employment with Defendant.    See ¶ 21.    Plaintiff alleges that Young accorded Herr preferential treatment as a result of their relationship.    See ¶ 22.  Specifically, Plaintiff alleges that Young assigned Herr additional overtime hours, increased Herr's hourly pay, and excused Herr's attendance in an intoxicated state.  See id.

Plaintiff voiced her frustration regarding Young's preferential treatment toward Herr on May 24, 2000.  On this date, Plaintiff learned that Young and Herr had together overseen the food service delivery and presentation for a recent event.  See ¶ 23.  Despite the fact that it was Plaintiff's usual responsibility to oversee such meals, Young and Herr had not included Plaintiff.  See id.  Young became angry when Plaintiff questioned him about why she was excluded from the event.  See id.  During the argument between Plaintiff and Young that ensued, Young broke a salad plate on Plaintiff's desk.  See id.

On June 2, 2000, Young terminated Plaintiff's employment, informing her that the reason for the termination was "food costs."  See ¶ 24.  Plaintiff further alleges that she was immediately replaced by Young's lover, Tony Herr.  See ¶ 26.  Based on these events, Plaintiff alleges that she ". . . was fired from employment, subjected to a hostile work environment, adverse work conditions, sexual harassment, intimidation, degraded, and otherwise treated in a disparate manner solely due to her sex and/or gender."  See ¶ 31.  Counts one and two of Plaintiff's amended complaint contain claims for sex discrimination under Title VII and the Pennsylvania Human Relations Act ("PHRA"), respectively.  See ¶ 38-43.

In count three, Plaintiff alleges that Young failed to perform his duties in an expected professional manner and failed to properly manage the club. See ¶ 47. As a result of Young's alleged failure to properly perform his job, Plaintiff alleges that she and her kitchen staff were subjected to rude, abrupt, inappropriate conduct, hostility, aggression and assaultive behavior. See id. Plaintiff avers that Defendant is liable to Plaintiff for this conduct because notwithstanding Defendant's knowledge of the risk of harm that Defendant posed to club members and staff, Defendant negligently retained Young and failed to supervise him. See ¶ 49.

## III.     Legal Argument

### A.     The Motion To Dismiss Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3rd Cir. 1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. See Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir. 1993). A complaint should be dismissed if " it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

> **B.    Plaintiff's Gender Discrimination Claims Must be Dismissed Because As A Matter Of Law, Alleged Favoritism By A Supervisor Toward A Romantic Interest Is Not Discrimination On The Basis Of Sex**

To establish a claim for sex discrimination, Plaintiff must show: 1) that she belongs to a protected class; 2) that she was performing her duties satisfactorily; 3) that she was discharged; and 4) that her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her sex. See Pivirotto v. Innovative Sys., 191 F.3d 344 (3rd Cir. 1999).

Preference shown to a paramour cannot as a matter of law form the basis of a sex discrimination claim. See, e.g., Hood v. Kaplan Educational Center, 60 F.Supp. 2d 1 (D. Ct. 1999) (granting employer's motion to dismiss plaintiff's sex discrimination claim where plaintiff alleged that her gay supervisor terminated plaintiff's employment and replaced her with male lover); Decintio v. Westchester County Med. Center, 807 F.2d 304, 308 (2d Cir. 1986), cert. denied, 484 U.S. 825 (1987) (finding preferential treatment on the basis of consensual romantic relationship is not sex-based discrimination); Womack v. Runyon, 147 F.3d 1298 (11th Cir. 1998) (affirming dismissal of sex discrimination claim where plaintiff alleged he was denied a promotion due to favoritism shown to supervisor's alleged paramour); Richardson-Longmire v. State of Kansas Adjutant General, 1999 U.S. Dist. LEXIS 3127 (D. Kan. 1999) (granting employer's 12(b)(6) motion and finding plaintiff's discrimination claim based on voluntary romantic relationship to be legally insufficient); Taken v. Oklahoma Corp. Comm'n, 125

F.3d 1366 (10th Cir. 1997) (holding plaintiff failed to state a claim for sex discrimination where plaintiff alleged only that supervisor pre-selected less qualified paramour); Mangum et al. v. West, 1997 U.S. Dist. LEXIS 8250 (S.D. Ala. 1997) (dismissing plaintiffs' claims based on paramour theory).

The case of Hood, 60 F.Supp. 2d 1, is instructive. In Hood, the plaintiff alleged sex discrimination after her employment was terminated and she was replaced by a male who became her supervisor's lover. In granting the defendant's motion to dismiss the plaintiff's complaint, the Hood Court explained why preference for a paramour failed to create an inference of discrimination as a matter of law:

> . . . in such circumstances, plaintiff faces exactly the same predicament as that faced by any other female or male. . . No one but the employee's romantic interest could be considered for the position because of his special relationship to the supervisor. . . It is difficult to conceive of circumstances under which this relationship . . . could give rise to an inference that plaintiff's gender was the basis for her discharge. Plaintiff certainly has not alleged anything from which this inference could be drawn.

Id. at 6-7; see also Sullivan-Weaver v. New York Power Authority, et al., 114 F.Supp. 2d 240 (S.D.N.Y. 2000) (dismissing plaintiff's retaliation claim based on plaintiff's complaints regarding supervisor's favoritism toward paramour and finding plaintiff's belief that such favoritism constituted gender discrimination unreasonable as a matter of law).

Applying the law to the facts, Plaintiff's amended complaint fails to state a claim for sex discrimination. Like the plaintiff in Hood, Plaintiff alleges that she was replaced by a male employee. However, also like the plaintiff in Hood,

Plaintiff alleges that the male employee who replaced her was engaged in a romantic relationship with Plaintiff's supervisor and that the male employee was accorded preferential treatment because of that relationship.  Just as in the Hood case, Plaintiff's predicament was no different than that of any other employee at the Club, male or female, supervised by Young.  All employees were at a disadvantage vis-à-vis Herr, according to Plaintiff, because Herr had an ongoing intimate relationship with Young and the other employees did not.

Under well-established case law, these allegations are insufficient as a matter of law to give rise to an inference of sex discrimination under Title VII. See Bellisimo v. Westinghouse Electric Corp., 764 F.2d 175 (3rd Cir. 1985) (Favoritism and unfair treatment, unless based on a prohibited classification, do not violate Title VII.)  They are similarly insufficient under the PHRA. The analysis and considerations under Title VII and PHRA are identical.  See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n.3 (3rd Cir. 2001). Moreover, Pennsylvania courts interpreting the PHRA have specifically adopted federal courts' interpretation of Title VII regarding the paramour issue and have found that sexual favoritism toward a paramour is not discrimination under the PHRA.  See Kryeski v. Glass, 626 A.2d 595 (Pa. Super. 1993) (granting summary judgment on plaintiff's PHRA sex discrimination claim based on alleged favoritism by plaintiff's supervisor toward employee with whom supervisor was having affair).  Therefore, Plaintiff's claims for sex discrimination under Title VII and the PHRA must be dismissed. [3]

---

[3]  Plaintiff avers in paragraphs 34 and 35 of her complaint that Gregory J. Celia, Jr., Chairman of the Board of Directors for Defendant Club, is Secretary of the Pennsylvania Human Relations

For the same reasons, Plaintiff's amended complaint does not state a hostile work environment claim upon which relief can be granted.  A supervisor's favoritism of a romantic interest similarly fails to give rise to a sexually hostile work environment claim.  <u>See</u> <u>Miller v. Aluminum Company of America,</u> 679 F.Supp. 495, 503 (W.D. Pa. 1988) (granting summary judgment on plaintiff's hostile work environment claim based on alleged sexual favoritism; stating "hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim"); <u>Becerra v. Dalton</u>, 94 F.3d 145 (4th Cir. 1996) (affirming summary judgment to employer where employee's sexual harassment claim was based on employer's favoritism to paramour); <u>see</u> <u>also</u> <u>Molthan v. Temple University</u>, 778 F.2d 955, 962 n.1 (3rd Cir. 1985) (noting that remarks not suggestive of gender animus do not support sexually hostile work environment claim).  Because Plaintiff's hostile environment claim stems from alleged hostility arising out of paramour favoritism, Plaintiff's amended complaint fails to state a claim for a sexually hostile work environment.

**C.     Plaintiff's Negligent Retention/Supervision Claim Must Be Dismissed Because It Is Barred By The Exclusivity Provision Of The Pennsylvania Workmen's Compensation Act**

In the third count of her amended complaint, Plaintiff alleges that Defendant is liable to her for various injuries that she allegedly suffered as a

---

Commission and that he failed to recuse the involvement of the Commission in the investigation of Plaintiff's complaint.  Plaintiff's complaint does not include a count specifically based on this alleged conduct.  However, to the extent that Plaintiff's PHRA claim seeks redress for these allegations, research did not reveal a case suggesting that relief is available under the PHRA for such conduct.  On the contrary, Pennsylvania law holds that "[b]efore it can be said that a judge (or commissioner) should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment."  <u>In re Appeal of Daniel Bystone</u>, 600 A.2d 672, 674  (Pa. Commw. 1991).  Notably, Plaintiff does not allege that any bias was shown toward her.

result of Young's failure to properly perform his job duties.  The Pennsylvania

Workmen's Compensation Act ("PWCA") provides the exclusive remedy for

employee work-related injuries.  In relevant part, the statute provides that:

> The liability of an employer under this act shall be exclusive and in
> place of any and all other liability to such employee, his or her legal
> representative, husband or wife, parents, dependents, next of kin or
> anyone otherwise entitled to damages in any action at law or
> otherwise on account of any injury or death. . .

77 P.S. § 481(a).  The statute does carve out an exception to exclusivity for

employee injuries caused by intentional conduct of third parties for reasons

unrelated to an employee's employment:

> The term 'injury arising in the course of his employment,' as used in
> this article, shall not include an injury caused by the act of a third
> person intended to injure the employee because of reasons
> personal to him, and not directed against him as an employee or
> because of his employment.

77 P.S. § 411(1).  However, this exception is not applicable when all of the

alleged behavior giving rise to the injuries is work-related or stems from work-

related disputes.  See Dewyer v. Temple University et al., 2001 U.S. Dist. LEXIS

1141 ((E.D. Pa. 2001) (finding personal animosity exception inapplicable

because plaintiff complained of reprimands, suspensions, criticisms, and loss of

parking privileges, all of which are work-related issues); Hammerstein v. Lindsay,

655 A.2d 597, 601 (Pa. Super. Ct. 1995) (where animosity develops because of

work-related disputes, PWCA is the exclusive remedy).  Nor is the exception

applicable where the evidence shows that the behavior complained of was

directed at a whole class of individuals, as opposed to solely against the plaintiff

---

Moreover, given the legally insufficient nature of Plaintiff's claims, as described in this motion,
Plaintiff cannot establish that she was harmed by any alleged bias as a matter of law.

for personal reasons.  See Hicks v. Arthur, 843 F.Supp. 949 (E.D. Pa. 1994) (finding personal animosity exception of PWCA inapplicable where alleged discrimination was directed at a group of individuals); Richardson v. Arco Chemical Co., 1996 U.S. Dist. LEXIS 12659, *11 (E.D. Pa. 1996) (finding PWCA preempted tort claim and stating "[I]f the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the 'third-party attack' exception").

The PWCA bars Plaintiff's negligent retention/supervision claim.  Notably, Plaintiff specifically pleads that her problems with Young arose from work-related disputes, including his reassignment of her duties to Herr (see ¶ 22, 23) and the fact that he allegedly ". . . failed to perform his duties in an expected professional manner . . . or otherwise failed to properly manage the club, including the dining facilities. . . ." See ¶ 47.  Plaintiff alleges that her supervisor acted within the scope of his employment when she avers that he was ". . . acting on behalf of and as agent for Defendant." See ¶ 30.[4]  Because the behavior complained of by Plaintiff is all work-related, the PWCA is the exclusive forum for Plaintiff's alleged injuries.

---

[4]  It is questionable whether a claim for negligent supervision of a supervisor is ever viable when accompanied by a claim for supervisor sexual harassment.  In such a case, the plaintiff generally alleges that her employer should be liable for her supervisor's actions through an agency theory. In that regard, the plaintiff necessarily alleges that her supervisor acted within the scope of his employment.  If a supervisor is acting within the scope of his employment, however, he cannot simultaneously be acting outside the scope of his employment.  Therefore, the personal animosity exception of the PWCA would not appear applicable to a claim that the employer negligently retained the supervisor.  See Gorwara v. AEL Industries, Inc., 1990 U.S. Dist. LEXIS 4311, *12-13  (E.D. Pa. 1990) (dismissing claim for negligent supervision as barred by PWCA partly because complaint did not allege that supervisor acted outside scope of employment, but rather that he acted either for his personal gain or for the benefit of Defendant).

The fact that Plaintiff's amended complaint alleges sex discrimination as part of the underlying conduct does not change the analysis.  As an initial matter, because Plaintiff's claims of sexual harassment are insufficient as a matter of law, they should not even be considered when analyzing Plaintiff's claim for negligent supervision/retention.  Moreover, in Durham Life Insurance Company v. Evans, 166 F.3d 139 (3rd Cir. 1999), the Third Circuit addressed the issue of whether the PWCA barred employment related torts based partly on allegations of sexual harassment.  In finding that such claims ordinarily should be barred, the Third Circuit noted that "[s]exual harassment is a well-recognized workplace problem. . . [b]ecause it is like other workplace hazards, we suspect that Pennsylvania would find IIED claims based on this kind of harassment to be preempted."  See id. at 160.n.16.[5]  See also Iacono v. Toll Brothers, Inc., 2001 U.S. Dist. LEXIS 21115 (E.D. Pa. 2001) (finding tort claim based on alleged sexual harassment to be barred by PWCA because sexual harassment does not fall into gambit of personal animus).

Furthermore, Plaintiff admits that Young's behavior was not only exhibited toward her but, on the contrary, was directed against the entire kitchen staff.  As a matter of law, such allegations of class-wide hostility do not fall within the personal animosity exception of the PWCA.  See Hicks, 843 F.Supp. 949.  Based on Plaintiff's allegations that Young was hostile to the entire kitchen staff and that such hostility manifested itself through work matters, Plaintiff cannot consistently

---

[5]    Although there have been some federal cases in which courts have declined to dismiss a tort claim based on sexual harassment as barred by the PWCA, these cases have involved allegations of inherently personal harassment directed at the plaintiff, such as sexual advances or

demonstrate that the personal animosity exception of the PWCA is applicable. Therefore, Plaintiff's claim of negligent supervision/retention must be dismissed because the claim is barred by the exclusivity provision of the PWCA.

## IV.     Conclusion

Plaintiff's amended complaint should be dismissed in its entirety and judgment should be entered in favor of Defendant.

Respectfully submitted,

McALEESE, McGOLDRICK, SUSANIN & WIDMAN, P.C.

Date:                    By:_____
                              Daniel J. Brennan
                              Christine N. Shultz
                              Suite 240, Executive Terrace
                              455 South Gulph Road
                              King of Prussia, PA   19406
                              (610) 337-4510

---

assault, unwelcome touchings, etc.  See Schweitzer v. Rockwell Int'l, 586 A.2d 383  (Pa. Super. Ct. 1990).  Plaintiff's complaint does not include any such inherently personal allegations.